Tari Hasty **JAHN, et al., Plaintiffs,**

v.

**WILSON FREIGHT LINES, INC., Defendant.**

**Civ. A. No. 87–343–1–MAC (WDO).**

United States District Court, M.D. Georgia, Macon Division.

June 16, 1992.

Joseph H. Chambless; Joseph Edward Williams, Jr., Macon, Ga.; Virginia M. Buchanan, Robert J. Mayes, Fredric G. Levin, Pensacola, Fla.; and Donald S. Caulkins, Franklin, Tenn., for plaintiffs.

John C. Daniel, III and John C. Edwards, Macon, Ga., for defendant.

Thomas Clifton Woody, II, Macon, Ga., for Tari Jahn.

## ORDER

OWEN, Chief Judge.

Before the court is the question of whether Tari Hasty Jahn, mother of Jacqueline Hasty, has the sole right to recover for the wrongful death of her deceased daughter. In making its determination, the court must decide whether or not Tari Hasty Jahn abandoned Jacqueline Hasty prior to her death. After careful consideration of the briefs of counsel and the record as a whole, the court hereby issues the following order.

## FACTS

On August 10, 1987, Howard Hasty and his three young children (Jacqueline, Valerie, and Curtis Hasty) were travelling from Howard Hasty's mother's home in Winter Park, Florida to their home in Adams, Tennessee. As they were driving through Macon, Georgia, Howard Hasty's car collided with a tractor trailer owned by Wilson Freight Lines, Inc. ("Wilson"), which was parked in the emergency lane of Interstate 75. Both Howard and Jacqueline Hasty were killed. The two other children survived, but sustained severe head injuries.

On November 27, 1987, First Tennessee Bank, N.A. (as special guardian of Valerie and Curtis Hasty) and Mark Hasty (as legal guardian of Valerie and Curtis Hasty, and as personal representative of the estates of Howard and Jacqueline Hasty) filed the instant action against Wilson. On April 12, 1991, Tari Hasty Jahn ("Ms. Jahn"), Howard Hasty's ex-wife and Jacqueline Hasty's natural mother, moved for leave to intervene in the above-captioned matter as an additional plaintiff. The court granted her motion shortly thereafter.

Howard Hasty and Ms. Jahn were married on December 16, 1978. In 1981, Howard Hasty enlisted in the United States Army and departed for Germany. Ms. Jahn was pregnant with Jacqueline, born October 29, 1981, and remained in Winter Park, Florida. Ms. Jahn and the three children left for Germany in June of 1982 to join Howard Hasty. Within eight months of moving to Germany, Ms. Jahn and Howard Hasty's marital problems, including Ms. Jahn's extramarital affair, led to the Army's decision to send Ms. Jahn home. Howard Hasty retained sole custody of the children.

In March of 1985, Howard Hasty was discharged from the Army. Thereafter, Howard Hasty and the children moved back and forth from Tennessee to Florida. Ms. Jahn testified that periodically she would catch up with the children and talk with them by phone. *See* Ex. 24 (telephone toll records). Ms. Jahn saw Jacqueline a

total of four times over a four year period prior to the accident. Jahn Dep. at 91.

Ms. Jahn subsequently gave birth to two more children (in 1983 and 1985), one of whom suffers from cerebral palsy.[1] This child has required constant and costly attention, including emergency surgery which has made travel to see the other children impracticable.

In March of 1987, Howard Hasty obtained a divorce by default judgment on grounds of desertion. The court awarded Howard Hasty absolute custody of the three children, but also granted Ms. Jahn reasonable visitation privileges. *See* Tab No. 120, Ex. A.

First Tennessee Bank and Mark Hasty ("plaintiffs") seek to prevent Ms. Jahn from pursuing this claim by alleging that she abandoned Jacqueline prior to Jacqueline's death. Plaintiffs rely on a Tennessee court order to support their contention. By his order of February 25, 1991, Judge Burton Glover, a judge in the Domestic Relations Court for Robertson County, Tennessee, concluded that Ms. Jahn had abandoned Curtis and Valerie Hasty, and further concluded that her parental rights in those kids were terminated. *See* Tab No. 142, Plaintiff's Ex. D.

## DISCUSSION

O.C.G.A. § 19–7–1(c)(2)(B) states that "if either parent is deceased, the right [to recover for the death of a child] shall be in the surviving parent." However, the surviving parent loses the right to recover by "fail[ing] to provide necessaries for the child or abandon[ing] the child." O.C.G.A. § 19–7–1(b); *Dove v. Carter*, 197 Ga.App. 733, 735, 399 S.E.2d 216 (1990); *Ramos v. Ramos*, 173 Ga.App. 30, 33, 325 S.E.2d 415 (1984). The burden of proof is clear and convincing evidence. *Ramos*, 173 Ga.App. at 33, 325 S.E.2d 415. In the event there is no surviving parent, the personal representative of the estate is the proper party to recover the proceeds of such action for the next-of-kin, pursuant to O.C.G.A. § 51–4–5.

**1.** It is doubtful that Howard Hasty fathered

■ As an initial matter, the court finds that the afore-mentioned Tennessee court ruling, as well as the February 6, 1989 order of that court, are not binding on this court's determination of whether or not Ms. Jahn abandoned Jacqueline prior to her death. Those decisions were rendered after the collision and did not concern Ms. Jahn's parental relationship with Jacqueline. Consequently, the court will disregard the Tennessee orders dealing with the issue of Ms. Jahn's abandonment.

1. Failure to provide necessaries

■ " 'It is a well-settled principle of law that the mere failure of a parent to provide support for a minor child who is in the possession or custody of another person, and no support of the child is requested or needed, is not a failure to provide necessaries....' " *Howell v. Gossett*, 234 Ga. 145, 147, 214 S.E.2d 882 (1975) (citations omitted). Jacqueline was in the custody of Howard Hasty at the time of her death. No court has ever required Ms. Jahn to pay child support. Furthermore, plaintiffs have presented no evidence to show that Ms. Jahn received any request to provide Jacqueline necessaries and failed to do so. Therefore, the court concludes that even if Ms. Jahn did not provide support for Jacqueline, her failure does not result in the loss of her parental rights.

2. Abandonment

■ " 'In order to find an abandonment, there must be sufficient evidence of an **actual desertion,** accompanied by an **intention to sever entirely,** as far as possible to do so, the parental relation, **throw off all obligations growing out of the same, and forego all parental duties and claims.' "** *In re J.C.P.,* 167 Ga.App. 572, 573, 307 S.E.2d 1 (1983) (citations omitted) (emphasis added). Attached to the affidavit Ms. Jahn submitted to this court are telephone toll records. *See* Ex. 24. An examination of these records reveals that in the two years preceding Jacqueline's death, Ms. Jahn telephoned Howard Hasty's mother's residence a total of sixty times. She tele-

either of these children.

phoned Howard Hasty's residence five times. Furthermore, Ms. Jahn saw Jacqueline twice in 1984, once in 1985, and once in 1987 (the week before Jacqueline was killed). Jahn Dep. at 91. While Ms. Jahn's contribution to Jacqueline may have been "paltry," Ms. Jahn did not abandon her daughter prior to her death. *See generally Dove*, 197 Ga.App. at 735, 399 S.E.2d 216.

In conclusion, the court finds that plaintiffs have failed to show by clear and convincing evidence that Ms. Jahn actually deserted Jacqueline Hasty or intended to sever entirely her parental relationship with Jacqueline Hasty. Accordingly, the court concludes that Ms. Jahn has not forfeited her parental rights and therefore is the proper party to bring this action for Jacqueline Hasty's death.

SO ORDERED.